OSPREY, The, v. The DELAWARE. See Case No. 3,763.

———

## Case No. 10,607.

### The OSSEO.

### The SANDY HOOK.

[8 Ben. 518.] [1]

District Court, S. D. New York. Oct., 1876. [2]

COLLISION IN LONG ISLAND SOUND — SCHOONERS CROSSING—BURDEN OF PROOF—LOOKOUT.

1. Two schooners, the O. and the S. H., came in collision in Long Island Sound at night. The O. alleged that the wind was south and she was heading south-west by west, close hauled, and made no change of course; and that the S. H. was seen, showing no light, about two points on the starboard bow of the O., sailing free, and would have passed the O. on the starboard bow of the O. but she ported her helm and ran into the O. The S. H. alleged that the wind was east of south and she was heading east by north-half-north; that the red light of the O. was seen off the lee bow of the S. H.; and that the O. put down her helm and ran into the S. H.: *Held*, that the courses of the two vessels were crossing, so as to involve risk of collision.

2. Therefore, it was the duty of the O. to keep her course and of the S. H. to keep out of the way.

[Cited in The Maria & Elizabeth, 7 Fed. 254.]

3. The burden of proof was on the S. H. to establish that the O. did not keep her course, and she had not established it.

4. No question of the lookout on the O. arose, it not being shown that she changed her course.

5. The S. H. was liable for the damages sustained by the O.

In admiralty.

R. H. Huntley, for the Sandy Hook.

R. D. Benedict, for the Osseo.

BLATCHFORD, District Judge. These are cross libels, founded on a collision which took place in Long Island Sound on the 12th of March, 1875, in the evening, after dark, between the schooner Sandy Hook, bound to the eastward, and the schooner Osseo, bound to the westward, whereby both vessels were damaged. The Sandy Hook had a cargo of oysters and was lightly laden. The Osseo was heavily laden with a cargo of laths, part of which was on deck.

The libel against the Osseo avers that the wind was east of south and was blowing a seven-knot breeze; that the Sandy Hook was under all her sails and top-sails, and

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprint by permission.]

[2] [Reversed in Case No. 10,608.]

was laying her course east by north-half-north, and the wind was abeam, so that she was making her course and was on her starboard tack; that she had all her lights properly set and burning brightly; that the atmosphere was clear, though the sky was overcast, and lights could readily be seen; that the Sandy Hook discovered the red light of a vessel at a distance of from one to two miles off, and to the eastward, and off her lee bow, which light proved to be the light of the Osseo; that, at that time, the wind was abeam to both vessels, and both were laying their courses; that the Osseo was steering about west by south, and was at all times to the leeward of the Sandy Hook, until she had approached to within about ten lengths of the Sandy Hook, when, being off the lee bow of the Sandy Hook, she suddenly put down her helm and changed her course; that, almost immediately upon so changing her course, the Osseo came violently into collision with the Sandy Hook, striking her in the bend of the bow, about opposite the cat-head; that, prior to and at the time of the collision, the lights on the Sandy Hook were burning brightly and were properly stationed; that a good and efficient lookout was stationed forward on her deck, and was in the active performance of his duties; that all proper means and efforts were taken by the master and crew of the Sandy Hook to avoid the collision; and that it was caused solely by the negligence and carelessness of those navigating the Osseo.

The answer of the Osseo alleges that the wind was blowing from the south a good breeze, and the Osseo was close-hauled, and on a south-west by west course, laying her course, and making about 3 or 3½ knots an hour; that she continued such .course without change till the collision; that the Sandy Hook had the wind about 3 points abaft the beam, and was sailing free about 7 knots an hour; that, when the Sandy Hook was first discovered by those on board of the Osseo, she was about half a mile distant, and about 2 points on the starboard bow of the Osseo, not having any of the regulation lights burning, and heading on a course which, if she had continued it, would have carried her past the Osseo some distance on the starboard hand; that the Sandy Hook, instead of continuing on that course, suddenly ported her helm and changed her course to the starboard, and came across the course of the Osseo, and ran into her, striking her on the bow; that, at the time of the collision, the Osseo had a competent man on the lookout, between the fore-mast and the main-mast, on the lee side, walking backward and forward, faithfully performing his duty, and she had all the lights required by law properly set and burning brightly; that the night was a clear night and lights on a vessel could be seen a long distance; and that the collision

was caused by the carelessness and negligence of those on board of and navigating the Sandy Hook, in that she had no proper lookout forward, performing his duty, in not sooner seeing the Osseo, in not having the lights required by law set and burning, in porting her helm and changing her course to starboard, and in not taking measures to avoid the Osseo, and was not caused by any negligence of those on board of and in charge of the Osseo.

The libel against the Sandy Hook contains the same averments which are above set forth as contained in the answer of the Osseo, and the additional averment that the Sandy Hook struck the starboard bow of the Osseo.

The answer of the Sandy Hook contains the same averments before set forth as contained in the libel against the Osseo, except that such answer avers that the wind was about south by east, and omits the averment that it was east of south; and except that such answer omits the averment that the wind was abeam; and except that such answer contains the averment that the Sandy Hook. was on the wind though not close-hauled; and except that such answer avers that the red light of the Osseo was discovered to the north-eastwardly and omits the averment that it was discovered to the eastward; and except that such answer avers, that when such red light was discovered. the vessels were both on the wind, and omits the averment that, at that time, the wind was abeam to both vessels; and except that such answer avers that the Osseo luffed into the wind and ran directly upon the Sandy Hook, and omits the averment that the Osseo changed her course and, almost immediately after so changing her course, came into collision with the Sandy Hook; and except that such answer avers that the collision was caused solely because the Osseo put down her helm and luffed, as before described, and because there was not a proper lookout on board of the Osseo.

The testimony in this case is so conflicting that it is impossible to arrive at a satisfactory conclusion as to what the truth is. But yet a satisfactory decision can be made, in accordance with the rules of navigation and with the rules applicable to the trial of suits for collision. Rule 17 of the rules of navigation in section 4233 of the Revised Statutes of the United States provides, that, "when two sail vessels are crossing so as to involve risk of collision, then, if they have the wind on different sides, the vessel with the wind on the port side shall keep out of the way of the vessel with the wind on the starboard side, except in the case in which the vessel with the wind on: the port side is close-hauled and the other vessel free, in which case the latter vessel shall keep out of the way." Rule 23 of said rules provides. that. where, by rule 17, "one of two vessels shall keep out of the way,

the other shall keep her course." The evidence shows that the courses of these two vessels were crossing, so as to involve risk of collision. The course of the Osseo was south-west by west and the course of the Sandy Hook was east by north-half-north. These courses drew on to each other a point and a half, and they were courses which crossed each other in such manner as to involve risk of collision, because their place of intersection was ahead of each vessel. Under such circumstances, it was the duty of the Sandy Hook to keep out of the way of the Osseo, and it was the duty of the Osseo to keep her course, because the Osseo had the wind on her port side, and was close-hauled, and the Sandy Hook had the wind on her starboard side and was free. The Sandy Hook did not keep out of the way of the Osseo, but she alleges, as a reason why she did not, that the Osseo, when at a point where, if she had kept her course, she would have gone clear of the Sandy Hook, luffed into the wind, and departed from her course, and turned towards the Sandy Hook and ran into the Sandy Hook. Where a vessel under obligation to keep out of the way of another vessel alleges that the latter prevented the performance of that duty by not keeping her course, it is incumbent on the former vessel to make out affirmatively such dereliction of the latter vessel, by a satisfactory preponderance of evidence. I do not think that the Sandy Hook has satisfactorily established, by the evidence, that the Osseo luffed or changed her course. It is not necessary to discuss the evidence in detail. The Osseo had the proper lights set and burning. If she is not shown to have changed her course, the question of her lookout does not arise.

The libel against the Osseo must be dismissed, with costs, and, in the suit against the Sandy Hook, there must be a decree for the libellants, with costs, with a reference to ascertain the amount of the damages sustained by the libellants.

[On appeal to the circuit court, both vessels were found to be in fault and the costs in both courts were equally divided. Case No. 10,608.]