## THE MARIA & ELIZABETH.

*(District Court, D. New Jersey.   May 4, 1881.)*

1. COLLISION—RULES 16, 17, AND 23 CONSTRUED—REV. ST. § 4233.

In Admiralty.   Libel *in rem*.
*R. P. Wortendyke*, for libellant.
*Flavel McGee*, for claimant.

NIXON, D. J.   This is a libel *in rem*, the libellant claiming damages for injuries and losses sustained by a collision with the vessel of the respondent on the seventeenth day of March, 1880, off Absecom light, on the coast of New Jersey. The facts seem to be as follows:

The respondent's schooner, the Maria & Elizabeth, left her dock at Hoboken, New Jersey, during the forenoon of the seventeenth of March, for the western branch of Elizabeth river, in the state of Virginia. Her crew consisted of six persons, besides the captain, Joseph Headley, who was also part owner. She had no quarter-deck, was of the burden of about 203 tons, and was laden with empty barrels, which were stowed some eight or nine feet above the deck. At about midnight of the same evening, when nine miles off of Absecom light, her watch was changed. The only persons left on deck were Job H. Ridgway, the mate in command, William Pace, (colored,) the lookout, and Henry Risley, at the wheel. The wind was blowing a moderate breeze from the north, veering occasionally a little to the west, and the night was clear and starlight. The Maria & Elizabeth was running a south-westerly course, with the wind, and having her sails set and on her larboard side.

On the afternoon of the same day the Achorn, the schooner of the libellant, of about 87 tons burden, left the mouth of Maurice river, New Jersey, loaded with glass sand, and bound for Brooklyn, New York. Her crew was Frederick Hess, captain, John Peterson, mate, Frank Smith, before the mast, and George Fox, the steward. The captain was at the helm until about midnight, when he surrendered the steering of the vessel to the mate and went forward. She was then heading north-easterly, with her sheets trimmed close to the wind and her sails on her starboard side. Captain Hess says that a few minutes before 1 o'clock he discovered a schooner ahead, (which proved to be the Maria & Elizabeth,) apparently sailing a south-west course before the wind. Both parties agree that the two vessels were approaching each other nearly head on; that shortly before the collision the helm of the Maria & Elizabeth was put hard a-port; that she struck the Achorn on the starboard side, just forward of the main chains, near the center of the hull; and that in a short time—some of the

witnesses testifying within 10 minutes and others after an hour—she went down to the bottom, carrying with her one of her crew (Frank Smith) who had returned to the sinking vessel for the purpose of detaching her from the Maria & Elizabeth.

It is perfectly clear that the collision was the result of faulty navigation. There was no severe stress of weather which affords any reasonable excuse for its occurrence. It can only be accounted for on the ground that one party or the other, or both, violated those fundamental rules of navigation which have been so long established for the safety of the sea, and many of which have become a part of the laws of the United States by express enactment of the legislature.

The proctor for the libellant claims that the case is one where the vessels were approaching each other,—the Maria & Elizabeth sailing with the wind free, and the Achorn close-hauled,—and that the rule of the sea in all such cases is that the ship sailing free must get out of the way of the one close-hauled. This has doubtless been the law for many years, and has now been incorporated in the sailing rules of navigation adopted by congress for the prevention of collisions. It appears as the exception of the seventeenth rule, (see Rev. St. § 4233.) *Handaysyde* v. *Wilson*, 3 Car. & P. 528; 1 Par. Ship. & Ad. 195; *The Clement*, 2 Curt. 363; *St. John* v. *Payne*, 10 How. 557; *The Ossio*, 8 Ben. 518; *The Rebecca*, 1 Blatchf. & H. 347. In this last case Judge Betts says:

"A cardinal rule of navigation, recognized by eminent authorities, is that a vessel running free, and approaching another going in an opposite direction in the wind, must give way to the latter, or bear the consequences of a collison, unless such collision be clearly produced by the misfeasance of the vessel that is close-hauled."

The same learned judge subsequently (*The Brig Emily*, Olcott, 138) said:

"The rule of law is explicit that a vessel running with the wind free must take the risk of avoiding another sailing in the wind, when the two meet in opposite courses, if the free vessel has the opportunity and means, if properly used, of so doing. Indeed, the usage for the vessel to hold her course, and for the one sailing free to give way in such case, has become a rule of law which imposes the losses and damage occasioned by

its non-observance upon the vessel which disobeys the rule, unless it be clearly proved that her misconduct in no way contributed to the injury."

See also *The Blossom*, Id. 188; *The Argus*, Id. 304.

But the proctor for the respondent invokes the benefit of sailing rule 16, (Rev. St. § 4233,) and insists that the testimony shows that the two vessels were meeting end on, or nearly end on, involving the risk of collision, and that the helm of both should have been ported, so that each might pass on the port side of the other. The Maria & Elizabeth, acting under this rule, put her helm hard a-port, and all her witnesses allege that the damage arose from the Achorn holding her course, rather than porting her helm as required.

When two of these rules thus come in conflict, it is the duty of the court, as far as possible, to reconcile them, or so to interpret them that both shall stand. That can only be done in the present case by making sailing rule 16 apply to the meeting of two vessels where one is not free and the other not close-hauled. By both porting their helms under such circumstances each would pass on the larboard side of the other. But the seventeenth rule provides "that when two sail vessels are crossing so as to involve risk of collision, then, if they have the wind on different sides, the vessel with the wind on the port side shall keep out of the way of the vessel on the starboard side." If the rule stopped there, the blame of the collision in the present case would fall upon the Achorn, which had the wind on her port side; but the rule continues, "except in the case in which the vessel with the wind on the port side is close-hauled and the other vessel free, in which case the latter vessel shall keep out of the way." The "latter vessel" here was the Maria & Elizabeth; and if she must keep out of the way, then the Achorn, by the twenty-third rule, was required to keep her course.

It was strongly contended at the hearing, by the proctor for the respondent, that the Achorn must have starboarded her helm and brought the injury on herself. If the evidence sustained such contention, the decision of the supreme court in

*The Nicholas*, 7 Wall. 657, would determine this case, and the libel must be dismissed. But the positive testimony is to the effect that the Achorn kept her course. It was only an inference that she changed, because the witnesses were unable to account for her position at the time of the collision upon any other hypothesis. But there is one undisputed fact in the evidence which seems of significance here. Captain Hess says that the Achorn was struck about midships, in her starboard side, and that her main-mast gave way and fell over on the Maria & Elizabeth. If this be so, then either the mast fell against the wind, which is not probable, or the wind was on the port side, and the Achorn was continuing her north-easterly course when the vessels came in contact.

After a consideration of the whole case, I think the weight of the testimony places the blame and responsibility of the collision upon the Maria & Elizabeth. Sailing free, she ought to have kept out of the way. Some testimony was taken as to the value of the vessel and freight lost, but it was not of such a satisfactory character as to enable me to act intelligently without a reference. The case must go to the clerk, as commissioner, to ascertain and report the damages.